```
MEGHAN BLANCO (238171)
LAW OFFICE OF MEGHAN BLANCO
28202 Cabot Road, Suite 300
Laguna Niguel, CA 92677
mblanco@meghanblanco.com
(949) 296-9869

Attorneys for Plaintiff
DANIEL NAVARRO
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-CR-340-AB |
| Plaintiff, | RULE 33 MOTION FOR NEW TRIAL |
| v. | |
| DANIEL NAVARRO, | |
| Defendant. | |

    Defendant Daniel Navarro, by and through his attorney of record, Meghan Blanco, hereby moves for a new trial pursuant to Federal Rule of Criminal Procedure 33. This motion is based on Rule 33, the attached Memorandum of Points and Authorities, and all files, records, and proceedings in this case.

Dated: February 24, 2026                              Respectfully submitted,

                                                                                         */s/ M.A.B.*
                                                                                        MEGHAN A. BLANCO

                                                                                        Attorney for Defendant

MEMORANDUM OF POINTS AND AUTHORITIES

I. INTRODUCTION AND FACTS

On July 31, 2025, a jury convicted Mr. Navarro of multiple counts of child sexual abuse. During the nearly three years of pretrial proceedings, Mr. Navarro repeatedly expressed his desire to represent himself. He proceeded *pro se* from April 2, 2024, through February 26, 2025. [ECFs 100, 163]. Approximately two months after the Court granted his request to proceed *pro se*, the United States filed a Superseding Indictment that substantially expanded both the scope of the allegations and Mr. Navarro's potential sentencing exposure. [ECF 116].

While housed in the Special Housing Unit at MDC, however, Mr. Navarro was unable to meaningfully prepare for trial. He lacked adequate access to discovery, legal research materials, writing supplies, and consistent communication with his investigator. For extended periods, he had no access to his legal materials at all.

On February 26, 2025—shortly before trial—counsel was appointed, and trial was continued to July 15, 2025. In April, Mr. Navarro submitted a letter to the Court raising concerns about his inability to prepare and to communicate with appointed counsel. [ECF 174]. Although a hearing was set for May 7, 2025, Mr. Navarro was not brought into court to address his concerns. [ECF 177; 204 ("I would like to bring to your attention since I was not allowed at court to do so.")]. He did not learn that the hearing had been vacated until he was already in the holding tank on the morning it was scheduled.

Despite raising concerns in writing in April, Mr. Navarro did not appear in court for any proceedings between February and July 2025. In July, he was arraigned on a Second Superseding Indictment that again greatly expanded the case and his potential exposure. Trial was reset for July 28, 2025.

At the July 16, 2025, pretrial conference—his first appearance before the trial court since February—Mr. Navarro requested permission to proceed *pro se*, explaining that he had not meaningfully conferred with appointed counsel and had previously written to the Court regarding his desire to represent himself. [TT

7/30/25 at 7:23–8:5].[1] The Court denied the request. Mr. Navarro renewed his request to terminate counsel on July 19. [ECF 206]. That request was also denied. On July 20, 2025, he submitted another letter advising the Court that he did not have access to his legal materials, was not permitted to call counsel, and was unable to communicate adequately in preparation for trial. He again referenced the unresolved April concerns and the May 7 hearing for which he had been transported but not heard.

Between February and July 2025, Mr. Navarro met with trial counsel at MDC only twice. Uncertain how trial would proceed and with his requests to proceed *pro se* unresolved, Mr. Navarro appeared for trial with a box containing more than 100 exhibits he had prepared, along with outlines of cross-examination questions.

Against this backdrop, on the second day of trial, Mr. Navarro unequivocally invoked his constitutional right to represent himself and to conduct his own cross-examination of the remaining witnesses. He expressed disagreement with counsel's strategic decisions, including the scope of cross-examination and the failure to pursue certain impeachment and suppression issues – issues he learned about for the very first time at trial.

After the Court indicated that counsel would remain in place, Mr. Navarro stated: "I want to represent myself, Your Honorable Judge." [TT 7/29/25 119:19–20.]

The Court responded: "Not now, not in Day 2 of the trial." [*Id.* at 119:21–23.]

Mr. Navarro reiterated: "I want to continue by myself." "Without counsel." [TT 119:22–24.]

The Court denied the request: "It's untimely. We are in trial." [*Id.* at 119:25.]

Mr. Navarro then invoked *Faretta* by name: "Under Faretta, I have the right." "I want to continue trial without him." [*Id.* at 120:1–4, 9–10.] The Court refused to relieve counsel and conducted no further inquiry.

The following morning, trial counsel renewed the request, explaining that Mr. Navarro had previously sent letters on July 19 and 20 asserting his *Faretta* rights, and that those letters did not appear on the docket. [TT 7/30/25 at 5:14–19]. The Court denied the renewed request, stating it was being made "for purposes of delay" and that there was "no need to grant or consider it." [TT 7/30/25 at 9:13–15].

Mr. Navarro clarified on the record: "I'm not asking for no delay. I want to

---

[1] Counsel has ordered, but does not have, transcripts from July 16, 2025. This statement is based on a good faith belief and on other references to the July 16, 2025 hearing contained in the record.

continue the trial representing myself." [TT 7/30/25 at 10:5–8]. The Court again denied the request.

At no point did Mr. Navarro request a continuance or additional time to prepare. To the contrary, he repeatedly stated that he was prepared to proceed immediately. His request arose during live trial proceedings in the context of cross-examination. During the remainder of trial, consistent with his stated desire to represent himself, Mr. Navarro repeatedly attempted to interject his own defense, including seeking to introduce exhibits he had prepared before trial began.

The record demonstrates that Mr. Navarro had previously represented himself for extended periods, was familiar with the record and discovery, and sought to proceed without delay. The Court conducted no inquiry into whether his request would disrupt proceedings (it would not, as Mr. Navarro unequivocally stated he was prepared to proceed with trial on his own, with "no delay") and made no finding of obstructionist conduct (the record makes clear he truly wished to exercise his right to represent himself – and was prepared to do so).

Under *Faretta v. California*, 422 U.S. 806 (1975), and controlling Supreme Court precedent, the erroneous denial of a defendant's right to self-representation—even mid-trial—constitutes structural error requiring automatic reversal.

III. LEGAL STANDARD

The Sixth Amendment grants a criminal defendant "personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975). That right guarantees a defendant "actual control over the case he chooses to present to the jury," and it "exists to affirm the accused's individual dignity and autonomy." *McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984).

Although the Sixth Amendment does not explicitly articulate a right to self-representation, the Supreme Court has held that the right is necessarily implied by the Amendment's text and structure. As *Faretta* explains, "[i]t is the accused, not counsel," who must be informed of the accusation, confronted with the witnesses against him, and accorded compulsory process. 422 U.S. at 819. "The right to defend is given directly to the accused; for it is he who suffers the consequences if

4

1  the defense fails." *Id.* at 819–20.

2  　　　The right to self-representation "applies at all critical stages" of a criminal
3  prosecution. *United States v. Rice*, 776 F.3d 1021, 1024 (9th Cir. 2015). Cross-
4  examination of government witnesses is plainly such a stage. *See United States v.*
5  *Yamashiro*, 788 F.3d 1231, 1234–35 (9th Cir. 2015) (a critical stage is any proceeding at
6  which substantial rights may be affected).

7  　　　When a defendant makes an unequivocal request to proceed *pro se*, the court must
8  grant it if the waiver of counsel is knowing and voluntary and the request is not made for
9  purposes of delay or disruption. Erroneous denial or revocation of self-representation at
10 trial constitutes structural error requiring automatic reversal. *United States v. Engel*, 968
11 F.3d 1046 (9th Cir. 2020); *United States v. Farias*, 618 F.3d 1049 (9th Cir. 2010).

12 　　　III.　　ARGUMENT
13 　　　A. Mr. Navarro's Requests to Self-Representation were Unequivocal
14 　　　Mr. Navarro's request to proceed *pro se* was unequivocal. During trial, he
15 repeatedly stated that he wished to continue the proceedings on his own and to proceed
16 without appointed counsel. His statements were direct and unambiguous. He did not
17 frame his request as conditional, tentative, or dependent on further rulings. Instead, he
18 clearly invoked his right to represent himself and to assume control of his defense at that
19 moment in the trial. Nothing in the record suggests vacillation, hesitation, or strategic
20 gamesmanship. Under controlling Ninth Circuit authority, such a clear and repeated
21 assertion satisfies *Faretta's* unequivocality requirement.

22 　　　B. Mr. Navarro's Requests Between April and July 20, 2025, Were Timely and
23 　　　　　Required Resolution
24 　　　Mr. Navarro began raising concerns regarding communication with newly
25 appointed counsel in April 2025 — months before trial and well before the July 16,
26 2025, final status conference. These requests were timely. *United States v. Hernandez*,
27 203 F.3d 614, 624 (9th Cir. 2000). They were made during the pretrial phase, at a point
28 when the Court retained full flexibility to inquire into the breakdown, conduct a hearing

if necessary, and implement an appropriate remedy without disrupting the trial schedule.

The Court initially set a hearing for May 7, 2025, to address Mr. Navarro's concerns. That hearing was taken off calendar the afternoon before it was to occur. Mr. Navarro was not informed of the cancellation. He was transported to court and remained in the holding cell under the belief that he would be brought before the court to address his communication concerns, only to learn that the matter had been removed from calendar. The proceeding that had been set to resolve his complaints never occurred.

The July 16, 2025, final status conference was the first trial-level hearing before the district court after counsel was appointed February 26, 2025. At that hearing, Mr. Navarro renewed his concerns regarding appointed counsel and desire to proceed *pro se*.[2] Thus, even at the earliest in-person opportunity before the trial court following counsel's appointment, he again sought to raise the issue on the record.

His subsequent requests through July 20 were not new or strategically delayed objections. They reflected the continuation of a communication breakdown he had been attempting to bring before the Court since April, including through a hearing that had been calendared and then vacated without his knowledge. A defendant does not render a constitutional concern untimely by renewing it after prior efforts to obtain relief went unaddressed.

If the Court intended to treat the matter as foreclosed based on timing, it was incumbent upon the Court to resolve the issue when it was first raised, when a hearing had already been set. Proximity to trial cannot justify denial where the delay stemmed not from inaction by the defendant, but from the absence of a

---

[2] Counsel has ordered, but does not have, transcripts from July 16, 2025. This statement is based on a good faith belief and on other references to the July 16, 2025 hearing contained in the record.

meaningful inquiry into a repeatedly asserted communication breakdown.

Under these circumstances, Mr. Navarro's April through July 20 requests were timely, consistent, and left unresolved.

B. The Mid-Trial Request Was Timely Given the Procedural History of His Requests and Was Not Manipulative

The Court denied Mr. Navarro's first trial request solely because it was made on "Day 2 of the trial," stating: "Not now" and "It's untimely. We are in trial." [TT 7/29/25 119–120.] That reasoning, however, isolates the request from the procedural history that preceded it and ignores the months-long record demonstrating that Mr. Navarro had been attempting to raise the same concerns well before trial began.

Mr. Navarro began raising communication concerns with newly appointed counsel in April 2025, shortly after counsel was appointed in February. Those concerns were raised months before trial and during the core pretrial period — a time when the Court had full authority to conduct an inquiry and implement any necessary remedy without affecting the trial schedule.

The Court set a hearing for May 7, 2025, to address those concerns. The hearing was taken off calendar the day before it was to occur. Mr. Navarro was not notified. He was transported to court and remained in the holding cell under the belief that he would be brought before the Court to address the communication breakdown, only to discover that the matter had been removed from calendar. The opportunity to resolve the issue was lost — not because of delay by Mr. Navarro, but because the hearing did not go forward.

The July 16, 2025, final status conference was the first trial-level appearance before the district court after counsel's February appointment. At that hearing, Mr. Navarro renewed his concerns. Thus, at the earliest in-person opportunity before the trial court, he again attempted to place the issue on the record. His requests through July 20 were not newly manufactured objections; they were continuations of an unresolved issue first raised months earlier.

When trial commenced without any meaningful inquiry into the asserted breakdown, Mr. Navarro renewed his request on Day 2, and again on Day 3. Viewed in context, these were not eleventh-hour tactics. They were the foreseeable consequence of an issue that had never been addressed despite repeated efforts to bring it before the Court.

A request is not rendered untimely simply because the Court declines to resolve it when first raised. Nor may a court rely exclusively on the calendar — "we are in trial" — without examining whether the defendant's conduct reflects manipulation or instead persistence in asserting a constitutional concern. There were no findings (nor could there be) that Mr. Navarro acted in bad faith, sought delay for strategic advantage, requested a continuance, or attempted to disrupt proceedings. He did not seek to recall witnesses or restart the case. The record reflects concern over communication, not gamesmanship.

By the time the request was renewed mid-trial, any time pressure was the product of the earlier failure to conduct a meaningful inquiry, not tactical delay by Mr. Navarro. The Day 2 denial treated the request as if it had arisen for the first time during trial. It had not. It was the culmination of repeated, unresolved attempts dating back to April.

In short, when the full procedural history is considered, the mid-trial request was not untimely and was not manipulative. It was a continuation of a long-standing, unresolved issue that the Court had multiple pretrial opportunities to address.

1. Mid-Trial Requests Are Not Per Se Untimely

While most pretrial requests are presumptively timely, Ninth Circuit precedent does not permit automatic denial simply because trial has begun. *See Engel,* 968 F.3d at 1046 (request made at the commencement of trial and reversed for a violation for *Faretta*). *See also United States v. Taylor*, 933 F.3d 1271, 1284 (11th Cir. 2019) (mid-trial requests must be evaluated for delay). A court must

assess whether the request is unequivocal, whether it is interposed for delay, and whether granting it would disrupt proceedings. *See Engel; Farias*.

Here, both trial denials rested exclusively on procedural posture — "We are in trial." [TT 7/29/25 at 119-120]. "No need to grant or consider [the request]." [TT 7/30/25 at 9:13–15]. No functional inquiry occurred. That categorical approach conflicts with governing law.

2. The Record Refutes Delay or Manipulation

The record does not support a finding of delay or manipulation.

Mr. Navarro did not request a continuance. In fact, he affirmatively stated that he did not want or need one. He did not seek additional time to prepare. He did not ask to recall witnesses or reopen prior proceedings. He sought only to proceed immediately and conduct the cross-examination himself.

On Day Three, when Mr. Navarro renewed his request, the Court initially expressed concern that the request was being made for purposes of delay. However, both Mr. Navarro and counsel clarified on the record that there would be no delay. Mr. Navarro expressly stated he was prepared to proceed immediately. He did not seek additional preparation time. Counsel confirmed that the trial could continue without interruption. The Court did not make a factual finding that delay would occur after that clarification (none would).

After the Court again denied the request, Mr. Navarro continued—consistent with his stated desire to represent himself—to attempt to assert control over his defense, including by seeking to introduce his own exhibits and pressing lines of questioning he believed were critical to impeachment and exculpation. His conduct demonstrated persistence in asserting autonomy, not a strategy to postpone proceedings.

That trial conduct must be viewed against the broader procedural history. Thus, when Mr. Navarro invoked his right during trial, he was not manufacturing a new grievance. He was renewing an unresolved issue that had been pending for months. The Day Two and Day Three requests were the culmination of repeated, unanswered

efforts—not an ambush.

Although the Court initially suggested on Day Three that the request was for delay, that premise was dispelled on the record. Mr. Navarro disclaimed any need for additional time and expressed readiness to proceed immediately. Counsel confirmed the same. In light of that clarification, the record does not support a finding of manipulation, obstruction, or tactical delay.

The Court ultimately denied the request on the ground that the case was "in trial." But under Ninth Circuit precedent, denial based solely on timing—without a supported finding of bad faith, obstructionist conduct, or meaningful disruption—is insufficient. And critically, the Court cannot now supply a post hoc disruption rationale that was neither articulated nor supported at the time of the ruling. The contemporaneous record contains no finding that granting the request would have meaningfully delayed or derailed the proceedings.

*United States v. Kaczynski* makes clear that timeliness is not determined by the calendar alone. Courts must examine motive, context, and whether the request reflects legitimate constitutional autonomy or an effort to manipulate proceedings. Here, the context shows a defendant who had repeatedly raised concerns pretrial, who renewed them at the final status conference, and who, when confronted with live evidentiary disputes at trial, sought to assume control immediately—without delay.

That is not manipulation. It is the assertion of a constitutional right.

3. Mr. Navarro's Request Could Not Have Meaningfully Disrupted Trial

The record does not support a finding of meaningful disruption. Mr. Navarro did not interrupt testimony, refuse to comply with courtroom procedures, or engage in disorderly behavior. He did not attempt to halt the proceedings or alter the trial schedule. He was prepared to continue immediately at the precise point where cross-examination was underway. There is no indication in the record that granting the request would have required recalling witnesses, reopening prior

proceedings, or materially altering the structure of the trial.

On Day Three, the Court initially expressed concern about delay, but both Mr. Navarro and counsel made clear that he was prepared to proceed immediately. He did not seek a continuance, additional preparation time, recall of witnesses, or any alteration of the trial schedule (and thus no interruption of the evidentiary sequence, juror schedule, or courtroom logistics would have resulted). After that clarification, the Court did not identify any concrete disruption that would flow from granting the request, nor did it explain how allowing Mr. Navarro to assume cross-examination would have interfered with the orderly presentation of evidence.

Absent contemporaneous findings, that granting the request would have meaningfully disrupted the proceedings, denial based solely on the fact that trial was underway conflicts with Ninth Circuit precedent. The mere posture of the case—"we are in trial"—is not, standing alone, a sufficient basis to deny a *Faretta* invocation. Nor may the record now be supplemented with post hoc rationalizations. There is nothing in the contemporaneous record suggesting that allowing Mr. Navarro to proceed would have caused delay, disarray, or interruption of the orderly presentation of evidence, and appellate review must be confined to what the trial court actually found—not what might be imagined after the fact.

C. The Error Is Structural

Under *Engel* and *Farias,* improper denial of self-representation constitutes structural error requiring automatic reversal.

Because the denial rested solely on timing and not on findings of delay or disruption, the violation is complete. No harmless-error analysis applies.

Mr. Navarro's stated reason for invoking the right — dissatisfaction with how exculpatory and impeachment evidence was being presented — is not peripheral. It goes to the core function of a criminal trial.

The Sixth Amendment guarantees not merely the right to a defense, but the right of the accused to decide whether he will present that defense personally.

The desire to exercise "actual control over the case he chooses to present to the jury" and to preserve his "individual dignity and autonomy" is not manipulation; it is the constitutional interest *Faretta* safeguards. The denial therefore constitutes structural error requiring a new trial.

V. CONCLUSION

Under controlling Supreme Court and Ninth Circuit authority, the denial of Mr. Navarro's right to represent himself during trial constitutes structural error. Mr. Navarro respectfully requests that this Court grant his Motion for New Trial pursuant to Federal Rule of Criminal Procedure 33.

Dated: February 24, 2026     Respectfully submitted,

　　　　　　　　　　　　　　　　　　/s/ M.A.B.
　　　　　　　　　　　　　　　　　MEGHAN A. BLANCO
　　　　　　　　　　　　　　　　　Attorney for Defendant