MEGHAN BLANCO (238171)
LAW OFFICE OF MEGHAN BLANCO
28202 Cabot Road, Suite 300
Laguna Niguel, CA 92677
mblanco@meghanblanco.com
(949) 296-9869

Attorneys for Plaintiff
DANIEL NAVARRO

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-CR-340-AB |
| Plaintiff, | REPLY IN SUPPORT OF RULE 33 MOTION FOR NEW TRIAL |
| v. | |
| DANIEL NAVARRO, | |
| Defendant. | |

Defendant Daniel Navarro, by and through his attorney of record, Meghan Blanco, hereby files the instant reply in support of his motion for new trial pursuant to Federal Rule of Criminal Procedure 33. This reply is based on Rule 33, the attached Memorandum of Points and Authorities, and all files, records, and proceedings in this case.

Dated: May 4, 2026                Respectfully submitted,


                                 /s/ M.A.B.
                                 MEGHAN A. BLANCO

                                 Attorney for Defendant

d

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

The government's opposition rests on a flawed premise that Mr. Navarro's request to represent himself was per se untimely because it was renewed on Day Two of trial. That is not the law—and it is not the record.

The government's argument depends on isolating a single moment at trial while disregarding what came before it. More critically, it mischaracterizes the July 16, 2025 pretrial hearing. At that hearing, after being denied a continuance, Mr. Navarro expressly stated that he was firing counsel because he did not need him. That was a pretrial invocation of his right to self-representation.

Because that invocation occurred before trial began, it was timely as a matter of law. The Court was therefore required to conduct a Faretta inquiry. It did not. Instead, the Court left the issue unresolved, proceeded to trial, and then denied the same request as "untimely" when Mr. Navarro renewed it on Day Two. That sequence—failing to address a timely pretrial invocation and then denying it based on timing—cannot be squared with controlling law.

Even setting the July 16 hearing aside, the renewed request was not untimely under Ninth Circuit standards. It was not made for delay, posed no risk of disruption, and reflected a consistent, ongoing assertion of Mr. Navarro's autonomy over his defense.

Under either framework, the denial was erroneous. Because the Court failed to engage the Faretta right at all, the error is structural and requires a new trial.

## II.    THE JULY 16 REQUEST WAS A TIMELY PRETRIAL INVOCATION AND SHOULD HAVE BEEN GRANTED

Mr. Navarro's *Faretta* right was initially invoked *before* trial began—at the July 16, 2025 pretrial hearing. During that hearing, he brought to the Court's attention that a fundamental breakdown in attorney-client communication existed. Additionally, he informed the court that that he was dissatisfied with his access to discovery and his

counsel's trial preparation. He had, in fact, been attempting to bring these issues to the Court's attention, through written submissions and a missed May 7 hearing, for several months prior thereto.

Mr. Navarro sought relief, including a continuance, to address those issues. The Court denied that request and made clear that the case would proceed to trial on July 28.

At that point—after being denied both a continuance and any meaningful relief regarding counsel—Mr. Navarro stated:

"Then Honorable Judge, I am firing this attorney because I don't need him."

That statement cannot be viewed in isolation. By that stage, Mr. Navarro had: (1) raised ongoing concerns about counsel; (2) sought relief that would allow him to proceed effectively; and (3) been denied that relief. Once the Court made clear that trial would proceed without accommodation, Mr. Navarro rejected counsel altogether.

In that context, his statement that he did not "need" his attorney was not a request for substitution—it was a declaration that he would proceed without counsel.

The Court's response confirms that understanding. The Court did not engage in any discussion of substitute counsel or explore the possibility of appointing new counsel. Instead, it repeatedly framed the issue as whether Mr. Navarro could discharge his attorney, stating: "I'm not going to allow you to fire your lawyer."

By focusing exclusively on whether Mr. Navarro could proceed without counsel—and not on whether new counsel would be appointed—the Court necessarily treated the request as one implicating self-representation. Yet it did not conduct a *Faretta* inquiry or otherwise address that constitutional right.

There was no alternative reading. The Court had already denied a continuance and did not offer substitute counsel. In that posture, the only reasonable interpretation of "I don't need him" is that Mr. Navarro intended to represent himself.

This case, therefore, as the government suggests, bears no resemblance to *Hendricks v. Zenon*. In *Hendricks*, the defendant never requested to proceed pro se; he sought only the substitution of counsel. The Ninth Circuit emphasized that a motion to

replace counsel—even when accompanied by dissatisfaction—"cannot be construed as a request to proceed without counsel, much less an unequivocal request for self-representation." *Hendricks,* 993 F.2d at 669.

Here, by contrast, Mr. Navarro did not seek replacement counsel. After being denied all other relief, he rejected counsel altogether. This was not a request for substitution; it was a clear invocation of the right to proceed pro se.

That distinction is reinforced by *United States v. Taylor*, which vacated a conviction where the district court denied a defendant's request to proceed pro se without conducting the required inquiry into waiver of counsel.[1] As the court explained, once a defendant invokes the *Faretta* right, the trial court bears a "weighty responsibility" to conduct a "sufficiently penetrating inquiry" before denying the request. Failure to do so constitutes structural error requiring reversal.

*Taylor* further confirms that the inquiry turns on whether the defendant has made a knowing and intelligent waiver—not on whether his reasoning is conventional or artfully expressed. A request is not rendered equivocal simply because it is stated inartfully.

Like the court in *Taylor*, the Court here denied Mr. Navarro's request without engaging in any meaningful inquiry and without assessing whether self-representation could proceed without disruption or delay.

The government's reliance on *United States v. Long* is likewise misplaced. Far from supporting a categorical denial, *Long* highlights the procedural safeguards that were absent here. In *Long*, the court repeatedly attempted to conduct a *Faretta* inquiry in response to the defendant's efforts to discharge counsel. *Long*, 597 F.3d at 723–25.

---

[1] Counsel inadvertently included an incorrect citation to *Taylor* in the moving papers. Counsel received the transcripts in this case less than a week before filing and worked expeditiously, around the clock, to avoid delay. At the time, counsel was also researching an issue in a supervised release matter, *United States v. Landum,* No. 13-cr-01227-AJB, involving the enforceability of a violation predicated on possession of an internet-capable device without probation approval – an issue addressed in *United States v. Blair*. In the course of that work, counsel inadvertently transposed the *Blair* citation—relevant to Mr. Landum's matter—with *Taylor*, which related to Mr. Navarro's. Mr. Landum ultimately admitted the violation a few days after the filing of Mr. Navarro's motion.

When the issue was finally addressed on the day of trial, the court directly asked whether the defendant wished to represent himself, and the defendant expressly declined. *Id.* at 724. The Fifth Circuit affirmed because the defendant had never clearly and unequivocally invoked the right and, when asked directly, disclaimed it. *Id*. at 724–26.

That procedural history bears no resemblance to what occurred here. In *Long*, the court confronted statements that were, at best, ambiguous. It resolved potential equivocation by directly asking the defendant whether he wished to proceed pro se—and it obtained a clear answer on the record. Here, by contrast, Mr. Navarro's statement was not equivocal. After being denied relief, he unequivocally rejected counsel by stating he was firing his attorney because he did not need him—the only reasonable interpretation of this proclamation is that he wanted to represent himself.

Even if the Court believes that ambiguity existed, *Long* makes clear that the proper course is to resolve it through inquiry, not disregard it altogether. The Court did neither. It did not ask whether Mr. Navarro whether he wished to represent himself, did not clarify his intent, and did not conduct a *Faretta* inquiry.

In short, *Long* does not support denial; it confirms the error.

I.        THE RENEWED JULY 29 REQUEST WAS LIKEWISE TIMELY

The government treats the fact that Mr. Navarro renewed his request on "Day Two of trial" as dispositive of its position. It is not. The government cites no controlling authority holding that a mid-trial *Faretta* request is per se untimely. If that were the rule, courts would not conduct *Faretta* inquiries after trials have commenced—as they have done in cases such as *United States v. Long* and *United States v. Kaczynski*. The existence of those cases confirms that timing alone is not dispositive.

The proper inquiry instead turns on context—whether the request reflects delay or manipulation, or, on the other hand, is a legitimate assertion of the defendant's autonomy. Here, the government's "Day Two" framing improperly isolates a single moment and fails to consider Mr. Navarro's preceding requests that contextualized his trial request.

Mr. Navarro's request during trial did not arise in a vacuum. It arose after a monthlong breakdown in communication with counsel—an issue that he clearly and repeatedly attempted to bring before the Court. By the time trial began, his constitutional concern had been persistently raised, but never meaningfully addressed. Viewed in that context, the Day Two request was not a new, last-minute tactic—it was the foreseeable continuation of an unresolved assertion of the right to self-representation. *See United States v. Kaczynski*, 239 F.3d at 1116.

The cases cited by the government do not establish otherwise. In *United States v. Carpenter*, the defendant did not express dissatisfaction with counsel until mid-trial and never actually requested to proceed pro se. Instead, when the court asked whether he was prepared to have counsel continue, he answered in the affirmative. 680 F.3d at 1102–03. The Ninth Circuit emphasized both the timing—"at the end of the second day of trial, after the government had presented six witnesses"—and the absence of any clear *Faretta* invocation.

Similarly, in *United States v. Bishop*, the request arose in a multi-defendant trial, and the court upheld denial because granting it "could have impaired the rights of his codefendants." 291 F.3d at 1114. The concern there was not timing alone, but the risk of prejudice and disruption in a joint proceeding.

And in *United States v. Schaff*, the request was made "three days after the jury was impaneled, and after the jury had already heard extensive testimony." 948 F.2d at 503. As in *Carpenter* and *Bishop*, the request was made for the first time mid-trial, after the proceedings were well underway and the evidentiary record had already developed. Those cases share a common feature absent here: the *Faretta* request was a first-time, midstream development, raising legitimate concerns about disruption or gamesmanship.

Mr. Navarro, in contrast, had already raised concerns about counsel and invoked his right to self-representation *before* trial—on July 16—after being denied a continuance and relief. His Day Two request was not a new position; it was the continuation of his earlier invocation. He did not seek delay, did not request to recall

witnesses, and did not attempt to restructure the proceedings. In contradistinction, he expressly stated that he was ready to proceed immediately and was "not asking for no delay."

The Third Circuit's decision in *United States v. Taylor* reinforces this position. There, the defendant repeatedly sought to represent himself and continued to assert that right through his conduct—even after the court denied his request—by filing pro se submissions and attempting to control his defense. The court held that once the right is invoked, the trial court bears a "weighty responsibility" to conduct a "sufficiently penetrating inquiry," and it vacated the conviction where that did not occur. The analysis did not turn on the precise moment of invocation, but on the defendant's sustained assertion of the right and the court's failure to meaningfully engage it.

That same dynamic is present here. Mr. Navarro did not abandon his request—he renewed it and attempted to act on it. The Court, however, did not evaluate delay, did not assess disruption, and did not conduct any *Faretta* inquiry. Instead, it treated timing as dispositive.

Taken together, the governing authorities establish a consistent rule: courts may deny late, disruptive, or manipulative requests—not simply requests made during trial. Mr. Navarro's request was none of those. It was the continuation of a previously asserted right and was capable of being implemented without disruption. Accordingly, "Day Two of trial" is not dispositive—and cannot substitute for the required analysis.

//
//
//
//
//
//
//
//

7

## II.     CONCLUSION

Under controlling Supreme Court and Ninth Circuit authority, the denial of Mr. Navarro's right to represent himself during trial constitutes structural error. Mr. Navarro respectfully requests that this Court grant his Motion for New Trial pursuant to Federal Rule of Criminal Procedure 33.

Dated: May 4, 2026                           Respectfully submitted,


_____/s/ M.A.B._____
MEGHAN A. BLANCO

Attorney for Defendant